THE KANSAS CITY LONG DISTANCE TELEPHONE COMPANY, *Appellant*, v. THE PAOLA TELEPHONE COMPANY, *Appellee*.

No. 16,240.

SYLLABUS BY THE COURT.

TELEPHONE COMPANIES—*Interchange of Business—Agreement Construed*. In this case a contract between a local telephone company and a long distance telephone company relating to the transmission of messages by each one over the lines of the other is interpreted, and it is held that the local company has the right to forward over the long distance line messages originating at a certain city with which the local company had no telephone connection when the contract was made.

Appeal from Miami district court; WINFIELD H. SHELDON, judge. Opinion filed January 8, 1910. Affirmed.

*F. M. Harris*, for the appellant.

*E. J. Sheldon*, and *S. J. Shively*, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The plaintiff owns and operates a long distance telephone line between Kansas City, Mo., and Paola, Kan. The defendant owns and operates a local exchange at Paola, with lines to various cities in Miami

county. The predecessors in interest of these parties entered into a contract, dated February 3, 1903, the material portions of which read as follow:

"(1) The first party agrees to build or maintain a telephone line or lines to the corporate limits of the city of Paola, Kan., and thence upon the poles of second party to its exchange or central office at Paola, Kan., for the purposes herein specified.

"(2) . . . And second party hereby grants a license to said first party to connect with the telephone exchange or system of second party through its switchboards so that an interchange of business may at all times be carried on between said parties. Such connections to be completed on or before July 1, 1904. It being understood and agreed that the lines of both parties hereto shall be so operated that service may be given from all lines owned, controlled or connected with the lines of either of the parties hereto over the lines of the other and its connections. And said parties agree not to enter into any contract with any other person, firm or corporation, whereby any of the rights, privileges or advantages herein acquired by either of the parties may be impaired, except as provided in paragraph four (4) hereof.

"(4) First party agrees to transmit all messages destined to points on the lines of second party not reached by its own system of wires, to and over the lines owned or controlled by said second party. It being further agreed and understood that where a point on the line of second party is also now reached by another independent or opposition line or lines, said first party hereby agrees to distribute the business for such common point as equally as practicable between second party and such other independent or opposition line or lines, but said first party reserves the right to transmit all business destined to such common point over such line or lines as will enable first party to render the best service. And the second party, in consideration of the benefits to be derived by it or him from the toll service herein provided to be furnished by first party, agrees to transmit all business to points not now reached by its or his own line or lines over the lines of the first party, Paola, Beavertown, Somerset, Louisburg, Bucyrus, Chiles, Wagstaff, Hillsdale, Spring Hill, Stanton.

"The plat hereto attached shows the existing lines of

the second party and the points now reached thereby, and is hereby made a part of this contract.

"(5) Each party hereto agrees to receive from the other and transmit all messages destined to points within its territory or on connecting lines which may be delivered to it by the other party hereto, subject to all the conditions herein contained.

"(10) It is further agreed that if both parties find it desirable or necessary from the amount of business or the nature of the service to establish a separate switchboard in the exchange of second party, and employ an additional operator or operators, that it shall have the privilege of so doing, in which case the division of toll charge shall be as follows: The first party shall receive 85 per cent and the second party 15 per cent of the sum charged for such message, in the manner hereinbefore provided.

"(14) This contract shall be and remain in force for and during the period of forty-nine years from the date hereof, and thereafter until one year's written notice shall have been given by either party to the other of its intention to terminate the same. Provided, that if the franchise of either party hereto shall expire within less time than above mentioned and be not renewed, and such party be compelled to cease doing business, this contract shall not be construed as requiring such party to do that which it is then unable to do."

No plat was attached to the contract. When the contract was executed the defendant had no line to Osawatomie. Formerly the defendant had constructed and owned such a line, but before 1903 it had been sold to the Osawatomie Telephone Company. In February, 1905, the plaintiff entered into a contract giving the Osawatomie company the sole right to transmit messages originating in Osawatomie over the plaintiff's line. In July, 1908, the defendant secured a connection with Osawatomie through the Farmers' Mutual Telephone Company of that city and commenced transmitting messages originating there over the plaintiff's line. The plaintiff brought an action to enjoin the defendant from so doing and secured a temporary restraining order to that effect. A demurrer to the peti-

tion was sustained. Thereupon the plaintiff filed an amended petition, against which a demurrer is still pending. Upon a hearing the restraining order was set aside and a temporary injunction was refused. The plaintiff appeals.

The fact that the demurrer to the original petition was sustained is no longer of consequence. The plaintiff submitted to the ruling and filed a new pleading, upon which the ultimate judgment will depend. The original petition having been superseded, the trial court would not be concerned with it even if this court were to conclude it stated a cause of action.

It is elementary that the granting or refusing of a temporary injunction is a matter of discretion with the trial court, and its conduct will not be censured unless its discretion has been abused. Even if it appeared to be reasonably clear that the district court ought ultimately to award the relief demanded, this court is unable to say that it acted arbitrarily or capriciously in refusing the temporary writ. Both parties, however, seem to want this court's views respecting the rights of the parties under the contract, and since an expression of those views may tend to shorten the litigation they will be indicated.

The plaintiff undertakes, properly enough, to interpret the contract by the situation of the parties when it was made, by the language of the instrument, and by the conduct of the parties under it. It is said that independent telephone exchanges in various cities were without the long distance connections which the plaintiff undertook to supply. In order for the business to be profitable it was necessary for local exchanges to extend their facilities, and they would not be warranted in doing this unless they were granted exclusive privileges. Therefore it was necessary to assign to each a specific territory, to which its operations should be confined. This argument throws no light on the question whether any specific territory was assigned to the defendant by

the particular contract in question. It does confess that the defendant had the right to extend its lines and increase its telephone facilities for the mutual benefit of both parties and was expected to do so. The plaintiff had no line to Osawatomie and no contract with any Osawatomie company. It wanted business, and the defendant was to get business for it. Suppose the plaintiff had been unable to induce an Osawatomie company to sign its long distance toll contract (none was signed for two years) and the defendant through its enterprise had established an Osawatomie connection: would the situation of the parties at the time the contract was made have colored the contract as now claimed?

Turning to the contract itself, it is said the enumeration of ten towns would be meaningless unless the defendant was to be confined to them. This argument runs counter to the one just noticed, which proceeds on the theory that the defendant was to expand its business for the mutual advantage of itself and the plaintiff. The list does not profess to be restrictive, and there is nothing anywhere in the contract expressly forbidding an invasion of any territory the defendant might desire to enter. The relations established by the contract were to continue for forty-nine years. A separate switchboard and additional operators were provided for to handle increased business. The interpretive clauses inserted in the second paragraph of the contract deal in universals—an interchange of business at all times and service from all lines owned, controlled or connected with the lines of either of the parties over the lines of the other and its connections. The list has no grammatical or other connection with what precedes, and follows immediately after an agreement relating to the transmission of communications to points not then reached by the defendant's lines. The list, however, has a relation to the next succeeding provision, which refers to a plat whose purpose was to show "the

existing lines" of the defendant and "the points now reached thereby." Future lines and other points to be reached in the future are implied. The plat was omitted. It is not reasonable to suppose that the naked introduction of this list into the contract was intended to change completely what otherwise is its clear meaning. The list is a good substitute for a plat. Regarded as such, it has a purpose and relieves the contract from ambiguity. All this being true, the court concludes that the wording of the contract does not limit the operations of the defendant to the ten towns named and does not exclude the forwarding of messages originating at Osawatomie.

The claim that the defendant by its conduct has demonstrated the restricted meaning of the contract fails. So long as the defendant had no Osawatomie connection it could offer the plaintiff no business from that point. As soon as it obtained a line to Osawatomie it asserted its rights under the contract.

The defendant seeks to fortify its position by means of an earlier contract, upon which it claims the one under consideration is based. The terms of that contract are in dispute. Each party holds an instrument which it asserts is one of the duplicate originals, but the two differ upon the precise matter in controversy. In one the defendant is granted exclusive service from Paola and any and all towns and exchanges in Miami county, provided it signs the plaintiff's long distance toll contract. In the other the defendant is granted exclusive service from Paola and "any and all towns and exchanges where they now have lines and exchanges in Miami county," provided it signs the long distance toll contract. The one harmonizes with the long distance contract which was subsequently signed and which appears above. If the other be correct, apparently it was superseded by the later writing.

The judgment of the district court is affirmed.